IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KOLBE & KOLBE MILLWORK CO., INC.,

       Plaintiff,       OPINION AND ORDER

  v.                13-cv-584-bbc

UMR, INC.,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

  Plaintiff Kolbe & Kolbe Millwork Company, Inc. originally filed this civil action against defendant UMR, Inc. in the Circuit Court for Marathon County, Wisconsin on July 31, 2013, alleging that defendant failed to execute its insurance claim duties under the parties' administrative services agreement. On August 16, 2013, defendant filed a notice of removal in which it asserted that plaintiff's claims are preempted by § 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a), giving this court subject matter jurisdiction under 28 U.S.C. § 1331. Now before the court is plaintiff's motion for remand on the ground that this court lacks subject matter jurisdiction. Dkt. #8.

  Because I conclude that plaintiff's breach of contract claim alleges a violation of a duty independent of ERISA and does not fall within the scope of an ERISA provision that plaintiff could enforce under § 502(a), I am granting plaintiff's motion and remanding this case. Contrary to defendant's assertion, this court cannot exercise supplemental jurisdiction

1

over the remaining state law claim because it never had federal question jurisdiction over the case.

I draw the following allegations of fact from plaintiff's complaint and the administrative services agreement submitted by defendant.

ALLEGATIONS OF FACT

Plaintiff Kolbe & Kolbe Millwork Company, Inc. is a manufacturer of specialty doors and windows in Wausau, Wisconsin that sponsors a self-funded group health plan for its employees. Defendant UMR, Inc. is the largest third-party administrator in the United States and processes 65 million claims valued at more than $6.8 billion each year. Plaintiff and defendant are parties to an administrative services agreement under which defendant provides ministerial administrative services and claims administration in connection with the operation and administration of the plan.

Defendant promised to comply with certain performance standards, which include "administer[ing] all managed care Claims per the terms and conditions of any contract(s) executed, directly or indirectly, between [plaintiff] and any third party health care related provider." Plaintiff contracted indirectly with various third-party health care providers to provide services to beneficiaries under the plan at specified contractual rates. Defendant was responsible for administering plaintiff's provider contracts and paying them when they submitted claims to the plan. Defendant made these payments using funds deposited by plaintiff into an account established for this purpose. In the case of an overpayment,

defendant was to seek a refund and agreed that it would be responsible for legal fees and costs if the overpayment arose out of or was based on its intentional, willful, reckless or negligent acts or omissions in the performance of its duties.

On August 2, 2007, K.G., a child of one of Kolbe's employees, was born with serious health conditions that required inpatient treatment at Children's Hospital of Wisconsin, Inc. by physicians of Medical College of Wisconsin, Inc. and Children's Medical Group. K.G.'s father did not answer certain questions regarding eligibility on the form seeking to add K.G. to plaintiff's plan. Children's Hospital and Medical College submitted claims to defendant for the services provided to K.G., seeking payment from plaintiff. Plaintiff informed defendant that K.G. might not be eligible for benefits under the plan and told defendant to hold all claims until K.G.'s eligibility could be determined. In early December 2007, plaintiff told defendant that it was still investigating K.G.'s coverage but that it understood that the providers needed to be paid. Plaintiff authorized defendant to process the claims related to K.G.'s care, provided that if the facts dictated that K.G. was not covered, the claims could be reprocessed and refunds obtained. Defendant sent checks to Medical College and Children's Hospital as payment for the services and continued to make additional payments, ultimately paying Medical College $472,263.24 and Children's Hospital $1,203,885.88 for treatment provided to K.G.

Before making the payments, defendant did not indicate to either provider that coverage was still being determined or confirm with either provider an understanding that if facts dictated that K.G. was not covered under the plan, the claims could be reprocessed

and plaintiff could obtain a refund. Defendant also did not review the relevant provider contracts to determine whether refunds would be available under the terms of those contracts if facts dictated that K.G. was not covered under the plan. Plaintiff would not have made these payments if it had known that a refund would not be available if the facts dictated that K.G. was not covered under the plan.

After plaintiff later determined that K.G. was not eligible under the plan, defendant demanded that Medical College and Children's Hospital return all overpayments made by plaintiff with respect to services provided to K.G. Medical College refused to return any overpayments and Children's Hospital refused to return all but a small portion of the overpayments. Plaintiff approved and hired outside legal counsel to pursue a refund but that effort has not yet been successful.

Plaintiff filed suit against defendant in state court on July 31, 2013, alleging that defendant breached its contractual duties by failing to inform Children's Hospital and Medical College before issuing payment that plaintiff was still investigating coverage for K.G. and by failing to insure that a refund would be made if K.G. were later determined to be ineligible for coverage. Defendant removed the case to this court on August 16, 2013, asserting that ERISA preempts plaintiff's state law breach of contract claim.

OPINION

Removal of an action originally filed in state court is permissible only where the federal courts have original jurisdiction over the action. 28 U.S.C. § 1441(a). The burden

of establishing jurisdiction falls on the party seeking removal. Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993). Defendant asserts that this court has jurisdiction over plaintiff's claims under ERISA, contending that the statute completely preempts plaintiff's state law claim. "Complete preemption, really a jurisdictional rather than a preemption doctrine, confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim. ERISA is such an area." Franciscan Skemp Healthcare, Inc. v. Central States Joint Board of Health & Welfare Trust Fund, 538 F.3d 594, 596 (7th Cir. 2008). See also Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."). Complete preemption is an exception to the ordinary application of the well-pleaded-complaint rule, which requires a court to look only to the complaint to determine whether federal question jurisdiction exists. Id.

The parties disagree about the test to be applied in determining whether a claim is completely preempted by ERISA. Defendant asks the court to rely on the three-part test set forth in Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1487 (7th Cir. 1996). However, in 2004, the U.S. Supreme Court announced a similar, but more abbreviated, two-part analysis. Davila, 542 U.S. at 210. Since then , as plaintiff points out, the Court of Appeals for the Seventh Circuit has noted that

> While the Jass decision itself has not been called into question, we find that the test outlined by the Supreme Court in Davila displaced the similar

5

> three-prong Jass analysis previously used in this circuit. Therefore, we are using the two-pronged analysis from Davila rather than the three-part Jass test. Regardless, the result would be the same.

Franciscan Skemp, 538 F.3d at 597 n.1. Although defendant attempts to distinguish Davila on the ground that the claim in that case involved the denial of medical benefits and argues that other courts have continued to rely on Jass, I agree with plaintiff that the court of appeals has adopted the Davila analysis, notwithstanding the subject matter of the claim at issue. Sullivan v. CUNA Mutual Insurance Society, 683 F. Supp. 2d 918, 936 (W.D. Wis. 2010) (applying Davila); Julka v. Standard Insurance Co., 2010 WL 376938, *2 (W.D. Wis. Jan. 27, 2010) (same). Moreover, the parties acknowledge that the two tests are essentially the same and are unlikely to yield conflicting results.

Under the Davila test, the court must determine (1) whether plaintiff's claim could have been brought under ERISA's civil enforcement provision, § 502(a), 29 U.S.C. § 1132(a)(1)(b); and (2) whether defendant's actions implicate legal duties dependent solely on ERISA and the plan. Davila, 542 U.S. at 210. If the answer to both questions is yes, then plaintiff's state law claim is preempted and recharacterized as a claim under § 502(a) of ERISA.

### A. Section 502(a)

Defendant asserts that plaintiff's claim satisfies the first factor of the Davila test because it is preempted by § 502(a)(2), which provides in relevant part that a civil action may be brought by a fiduciary "for appropriate relief under section 1109." Section 1109

6

establishes personal liability for fiduciaries who breach their obligations or responsibilities to the plan and provides that the fiduciary restore to the plan "any profits . . . which have been made through use of assets of the plan." A person is a fiduciary with respect to an ERISA plan to the extent that "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Therefore, under defendant's theory, both it and plaintiff would have to be fiduciaries and defendant allegedly would have breached a fiduciary duty to the plan.

As defendant points out, plaintiff could fit the definition of a fiduciary in certain circumstances. However, "not all decisions that affect plan assets fall within the scope of a fiduciary's obligations." Chesemore v. Alliance Holdings, Inc., 886 F. Supp. 2d 1007, 1041 (W.D. Wis. 2012). The Supreme Court has recognized that employers who sponsor ERISA plans wear "'two hats,' acting as a fiduciary to the extent that they administer or manage the plan and as an employer to the extent they engage in settlor functions such as establishing, funding, amending or terminating" the plan. Id. (citing Pegram v. Herdrich, 530 U.S. 211, 225–27 (2000)). See also Sonoco Products Co. v. Physicians Health Plan, 338 F.3d 366, 373 (4th Cir. 2003) (plan sponsor acts in fiduciary capacity when pursuing legal action only when its claims relate to carrying out its fiduciary responsibilities).

The complaint does not imply that plaintiff is suing in its capacity as an ERISA fiduciary. Plaintiff is seeking to recover for its own injuries (a payment made out of its

7

general operating account and costs associated with seeking a refund of that payment) and not any injury to the plan or its participants and beneficiaries. Sonoco, 338 F.3d at 373 (plan sponsor not acting as a fiduciary where its claims "relate solely to its own injuries, and not to its fiduciary responsibilities to the plan or to the plan's participants and beneficiaries"); Phipps Houses Services, Inc. v. New York Presbyterian Hospital, 2013 WL 1775388, *2 (S.D.N.Y. Apr. 25, 2013) (employer not acting as fiduciary in bringing claims against hospital because employer seeking to vindicate right independent of plan and its duties to plan will continue regardless whether it obtains relief); Taylor Chevrolet, Inc. v. Medical Mutual Services, LLC, 2007 WL 1452618, *6 (S.D. Ohio May 15, 2007) (plaintiff not asserting claims in fiduciary capacity on behalf of beneficiaries or participants because it seeking to enforce its own rights under separate, distinct contract it had with defendant). Although defendant argues that plaintiff is seeking to recover a plan "asset," the only harm suffered was by plaintiff. The plan beneficiaries suffered no harm; defendant paid all of the claims submitted to the plan. Even though the amount of the reimbursement sought by plaintiff may be dictated by what the ERISA plan paid out, it does not follow that plaintiff is acting in its fiduciary capacity in asserting its breach of contract claim.

Defendant also asserts that plaintiff's allegations are best framed as a breach of defendant's fiduciary obligations to the plan. However, plaintiff has not alleged that defendant failed to carry out its fiduciary duties of processing benefit claims and distributing plan funds under the terms of the plan. Rather, the claim relates to the relationship between the parties, which is independent of any duties either party had to the plan or its participants

and beneficiaries.  Geweke Ford v. St. Joseph's Omni Preferred Care Inc., 130 F.3d 1355, 1359 (9th Cir. 1997) (third-party administrator's "alleged failure was to file the claim with [the excess liability insurer] properly and in a timely manner, it was not a failure to administer the Plan").

In addition, the administrative services agreement states that defendant was retained to perform ministerial duties and is not a fiduciary with respect to the plan.  Although such language may not always be dispositive, defendant has failed to explain how it was acting as a fiduciary to the plan when it allegedly failed to do what plaintiff asked to insure that *plaintiff* could get a refund.  Pegram, 530 U.S. at 225 ("the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint").  Even if, as defendant argues, the tasks that it allegedly failed to perform were not explicitly required under the administrative services agreement, that does not mean that the plan required them.  The plan speaks only in general terms about the role of the third-party administrator.  Accordingly, I do not find that either party was acting as a fiduciary to the plan or its beneficiaries under the circumstances alleged in the complaint.

## B.  Independent Legal Duties Factor

Defendant also fails to establish complete preemption under the second factor of the Davila test because plaintiff is clearly seeking to enforce its rights under a separate

administrative services contract with defendant. Plaintiff alleges that defendant failed to follow its directions and make it clear to K.G.'s providers that plaintiff was still investigating coverage and would seek a refund if it later determined there was no coverage. Although the plan states that plaintiff will use the services of a third party administrator, that is as far as the plan goes with respect to the duties of the third party administrator. The parties' respective obligations to each other flow directly from the administrative services agreement and not the plan. Analytical Surveys, Inc. v. Intercare Health Plans, Inc., 101 F. Supp. 2d 727, 734 (S.D. Ind. 2000) (finding same where plaintiff's relationships with defendants were governed by two contracts independent of plan). Although defendant argues that the administrative services agreement did not explicitly require it to perform the tasks that plaintiff alleges it failed to perform, that question is a matter of contract interpretation for the state court to decide.

   Defendant further argues that an interpretation of the plan is necessary in this case because plaintiff's claim is based on the allegation that K.G. is not eligible for benefits. However, as plaintiff points out, it is not suing defendant for paying third-party providers for services provided to a person not covered by the plan. Rather, it is suing defendant on the ground that it improperly processed payments and administered third-party provider agreements in light of the eligibility determination made by plaintiff at the time. K.G.'s actual eligibility for benefits is irrelevant to the determination whether defendant took care to process the payments in a manner that would have insured a refund if it was later determined that K.G. were ineligible. At most, defendant may seek to use K.G.'s eligibility

as a defense to the claim that plaintiff was entitled ultimately to an overpayment. However, the fact that defendant might be able to raise the plan as a defense to the breach of contract action does not confer jurisdiction on this court. Caterpillar, Inc. v. Williams, 482 U.S. 386, 398-99 (1987) ("[A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated."). I conclude that the administrative services agreement provides an independent basis for what plaintiff contends are defendant's legal obligations.

C. Supplemental Jurisdiction

In a final argument, defendant asks this court to exercise supplemental jurisdiction over those components of plaintiff's claims that the court may find are not entirely covered by ERISA. The supplemental jurisdiction statute provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction." 28 U.S.C. § 1367(a). Because I have found that this court never had original jurisdiction over any claims in this action, the court does not have the authority to exercise supplemental jurisdiction over the remaining state law claim. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966) (in order to exercise supplemental jurisdiction, "federal claim must have substance sufficient to confer subject matter jurisdiction on the court"); Taylor v. Appleton, 30 F.3d 1365, 1370 n.5 (11th Cir. 1994)

("Before a federal court can exercise supplemental jurisdiction, it must first have either diversity or federal question jurisdiction."). As a result, defendant's request is improper and will be denied.

ORDER

IT IS ORDERED that plaintiff Kolbe & Kolbe Millwork Co., Inc.'s motion to remand, dkt. #8, is GRANTED. This case is REMANDED to the Circuit Court for Marathon County, Wisconsin.

Entered this 31st day of December, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge